IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KOLETTE SMITH,

    *Plaintiff,*

vs.

BRIAN WILLIAMS and LABETTE
COUNTY MEDICAL CENTER d/b/a
LABETTE HEALTH,

    *Defendants.*

Case No. 20-CV-2224-EFM-GEB

**MEMORANDUM AND ORDER**

Plaintiff Kolette Smith brings suit against Defendants Brian Williams and Labette County Medical Center d/b/a Labette Health. She asserts two claims under 42 U.S.C. § 1983 for denial of property and liberty interests without due process of law. In addition, she asserts several tort claims. Defendants filed a Motion to Dismiss (Doc. 25) asserting that Plaintiff fails to state a claim. Plaintiff also filed a Motion to Dismiss seeking the dismissal of Counts 3, 6, and 7 (Doc. 37). For the reasons stated in more detail below, the Court grants in part and denies in part Defendants' motion and grants Plaintiff's motion.

I.  **Factual and Procedural Background**[1]

Plaintiff is a licensed physician in Kansas. Plaintiff formerly worked for Defendant Labette Health, a public hospital in Labette County, Kansas, as a hospitalist. Plaintiff and Labette Health engaged in negotiations aimed at Plaintiff continuing that role for Labette Health but were unable to reach an agreement. After the end of Plaintiff's relationship with Labette Health, Plaintiff sought employment elsewhere.

Defendant Williams is the President and Chief Executive Officer of Labette Health. Williams became aware that Plaintiff was seeking employment with other medical care entities in the geographic area. He began writing to or calling those entities telling them that Plaintiff had a "non-compete agreement" and that she was breaking it by seeking employment with them. Plaintiff did not have a "non-compete agreement" with Labette Health. In addition, Plaintiff attempted to obtain her medical license in Missouri. Williams falsely told the Missouri Board of Registration for the Healing Arts that Plaintiff had refused to perform call obligations and that Plaintiff was difficult to work with. As a result of Williams' conduct, Plaintiff was forced to hire a lawyer to assist her in obtaining her Missouri license.

Plaintiff asserted seven claims in her Amended Complaint. She, however, filed a Motion to Dismiss three of those claims (Counts 3, 6, and 7) after the briefing on Defendants' Motion to Dismiss concluded. Thus, the Court will not discuss or address those claims.[2]

---

[1] The facts are taken from the Amended Complaint and are stated in the light most favorable to Plaintiff, the non-moving party.

[2] Those claims are (3) tortious interference with prospective economic advantage (acts in Kansas), (6) fraud (acts in Kansas), and (7) false light invasion of privacy (Kansas acts). Because Plaintiff dismisses her Kansas tort claims, the Court need not address the parties' arguments regarding the applicability of the Kansas Tort Claims Act and whether the procedural requirements were met.

The four remaining claims are: (1) a § 1983 claim for denial of property interests without due process of law; (2) a § 1983 claim for denial of a liberty interest in reputational integrity without due process of law; (4) tortious interference with prospective economic advantage (acts in Missouri); and (5) defamation (acts in Missouri). Defendants seek dismissal of all claims.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] The court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[8] *See id.* at 678.

of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]  Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss.  However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[10]

### III.  Analysis

Plaintiff asserts two § 1983 claims.  She first asserts the denial of a property interest without due process of law.  She next asserts the denial of a liberty interest without due process of law. Defendants state that Plaintiff fails to state a claim under § 1983 because she fails to identify a valid, enforceable property or liberty interest.  In addition, Defendant Williams asserts that he is entitled to qualified immunity.[11]

Plaintiff asserts two additional claims for tortious interference with prospective business advantage and defamation.  Defendants contend that Plaintiff fails to state a claim and thus those claims should be dismissed.  The Court will address each claim.

**A.     Count 1 – Denial of a Property Interest Without Due Process Under § 1983**

Plaintiff alleges that she had a fundamental right in and protected property interest in her medical license and its concomitant privilege of seeking employment consistent with that license.[12]

---

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (citations omitted).

[11] Defendant Labette Health also asserts that it cannot be liable under § 1983 because Plaintiff does not allege any policy or custom that was a moving force behind any deprivation.  Labette Health, however, raised this issue for the first time in its reply.  Generally, the Court will not address arguments raised for the first time in a reply brief. *Castro v. Dot's Pretzels, LLC*, 2021 WL 3674739, at *4 (D. Kan. 2021) (citing *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013)).  Thus, the Court declines to consider this argument.

[12] In this claim, Plaintiff asserts that she has a protectable property interest in her medical license and the privilege of seeking employment consistent with that license.  Although Plaintiff's medical license may be a property

She claims that after separating from Labette Health, Williams communicated with at least three health care entities informing them that Plaintiff was breaking a non-compete agreement by seeking employment with them. Plaintiff contends that Williams denied her both procedural and substantive due process of law.

### 1. *Procedural Due Process*

"Procedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest."[13] "A license to practice medicine is a property right deserving constitutional protection, including due process."[14] In some circumstances, the actual revocation of a license is unnecessary but rather the "effective revocation" of that license has been found to be the deprivation of a liberty interest.[15] "Actions taken by the State which destroy the value or utility of a protected property interest constitute a Fourteenth Amendment deprivation of that interest for which due process cannot be denied."[16]

Here, Plaintiff has a medical license. Defendants argue, however, that although a medical license may be a protected property interest in some scenarios, it is not a valid, enforceable interest

---

interest, the privilege of seeking employment and/or the right to enjoy employment opportunities in a chosen field is usually defined as a liberty interest. *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (noting that the "right to enjoy employment opportunities in [a] chosen field" has repeatedly been upheld as a liberty interest). Thus, the Court will consider this contention in further detail below with regard to Plaintiff's claim for violation of due process of her liberty interest.

[13] *Id.* at 1149 (citation omitted).

[14] *Keney v. Derbyshire*, 718 F.2d 352, 354 (10th Cir. 1983) (citing *Green v. McElroy*, 360 U.S. 474, 492 (1959)).

[15] *Stidham*, 265 F.3d at 1152-53 (noting that the dissemination of false and fatally damaging allegations against the plaintiff to his potential employers, and in contravention of statutory procedures, and resulting in the plaintiff being unable to use his license to obtain employment stated a claim for deprivation of a protected property interest despite his license not being actually revoked).

[16] *Stidham*, 265 F.3d at 1153.

as applied to Williams or Labette Health because Williams did not have the ability to control or affect her license. Defendants specifically contend that Plaintiff does not state a claim to a valid, protectable property interest because it is only protected from interference by licensing agencies or boards that have the ability to directly and adversely affect a person's license. The Court cannot agree.

"A defendant is liable under 42 U.S.C. § 1983 if, acting under color of state law, []he deprives a plaintiff of any rights, privileges, or immunities secured by the Constitution."[17] And "[t]o state a viable § 1983 claim upon which relief may be granted, plaintiffs must allege that: (1) they have been deprived of a federally protected right and (2) the person who has deprived them of that right acted under color of state or territorial law."[18] The plain language of the statute and case law simply require that the defendant who deprived the plaintiff of the right or privilege acted under the color of law. There is nothing in the statute stating that it is only applicable to licensing agencies or boards. Here, Plaintiff alleges that Williams, acting under color of state law, impaired and/or deprived her constitutionally protected property interest in her medical license without due process of law. She claims that she was unable to obtain employment with her medical license because Williams informed other health care entities that she could not seek employment with them by falsely claiming that she was violating a non-compete agreement.[19]

---

[17] *Gorenc v. Proverbs*, 462 F. Supp. 3d 1137, 1143 (D. Kan. 2020) (quotation marks and citations omitted).

[18] *Id.* (quotation marks, alteration, and citations omitted).

[19] In Plaintiff's response, she also alleges that she had an existing employment relationship with one employer, DocsWhoCare, and that Williams' statements negatively affected that relationship and caused her to lose that employment. These allegations were not in her Amended Complaint, but she seeks leave to amend and clarify this relationship. The Court will allow Plaintiff to amend her complaint to include these allegations.

As noted above, if actions taken under color of state law result in the effective revocation of a license to obtain employment, it may be sufficient to state a claim for the deprivation of a protected property interest.[20] Here, it appears that Plaintiff's allegations satisfy this standard as she effectively could not use her medical license. Thus, the Court finds that Plaintiff adequately alleges that Williams interfered with a protected property interest in Plaintiff's medical license.[21]

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[22] In this case, Defendants primarily address that Plaintiff fails to allege a protectable property interest. As to the second step—due process procedures—they simply state that Plaintiff fails to allege what process was owed to her under the law before or after Defendants could communicate with potential employees or medical boards. Yet, Plaintiff alleges that Williams acted without informing Plaintiff of what he was doing and thus did not give her any opportunity to challenge his conduct through any procedural or administrative mechanisms. Although Plaintiff's due process allegations are cursory, the Court finds that Plaintiff adequately alleges that she was not afforded procedural due process with regard to a property interest.

---

[20] *Stidham*, 265 F.3d at 1153 (noting that "[a] state agency cannot escape liability for depriving an individual of a legitimate property interest merely by arguing that it has not revoked or destroyed the actual legal title to that interest" and that actions "which destroy the value or utility of a protected property interest constitute a Fourteenth Amendment deprivation of that interest for which due process cannot be denied"). Defendants only briefly state that Williams did not act under color of state law, but they do not adequately brief this issue.

[21] At this stage, the Court is considering the pleadings. The evidence may well show that Plaintiff's medical license was not effectively revoked or that Defendants' actions did not impact her medical license. At the pleading stage, however, Plaintiff's allegations adequately allege a protected property interest in her medical license that was effectively revoked.

[22] *Lauck v. Campbell Cty.*, 627 F.3d 805, 811 (10th Cir. 2010) (quotation marks, alteration, and citation omitted).

*2.     Substantive Due Process*

As to Plaintiff's substantive due process claim, "[a] violation of substantive due process may arise in two ways—from (1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."[23] "The standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.' "[24] It requires more than intentional or reckless behavior by the misuse of government power and instead must have "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."[25]

Defendants argue that Plaintiff cannot identify a fundamental right, that Plaintiff fails to adequately allege that Defendants actually infringed with that right, and that she fails to adequately allege that she was deprived of a property or liberty interest in a manner so arbitrary it shocks the judicial conscience. The Court will only address Defendants' third contention.

Substantive due process claims require a high level of outrageousness.[26] "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."[27] The limits are imposed "to restrict the scope of substantive due process claims, [and] the concern that § 1983 not replace state tort law."[28]

---

[23] *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citation omitted).

[24] *Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1287 (D. Kan. 2005) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)).

[25] *Id.* (citation omitted).

[26] *Klen v. City of Loveland, Colo.,* 661 F.3d 498, 513 (10th Cir. 2011).

[27] *Id.* (quoting *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006)).

[28] *Id.* (citing *Camuglia*, 448 F.3d at 1223).

Here, Plaintiff fails to allege outrageous conduct. Instead, she alleges that Defendants falsely informed other health care entities that they could not employ her because she was violating a non-compete agreement. In addition, she simply alleges that Defendants falsely told the Missouri Board of Registration of Healing Arts that she refused call obligations. Nothing about this conduct is outrageous or conscience shocking. Thus, Plaintiff's substantive due process claim, whether premised on a property or liberty interest, fails. Accordingly, the substantive due process claim is dismissed.

**B.    Count 2 – Denial of a Liberty Interest in Reputational Integrity Under § 1983**

Plaintiff claims that she has an interest in the integrity of her reputation for honesty and keeping her word. She asserts that Williams interfered with that interest by communicating with potential employers and falsely stating that Plaintiff was breaking a non-compete agreement which foreclosed those opportunities. In addition, Plaintiff contends that Williams' false communication to the Missouri Board of Registration for the Healing Arts damaged her reputational integrity. She claims that Williams denied her both procedural and substantive due process of law.[29]

"To support a claim for a deprivation of a liberty interest in one's reputation, damage to one's reputation alone is insufficient to invoke the protections of the Due Process Clause."[30] Instead, it requires a plaintiff "to show that their reputation was damaged 'in connection with [an] adverse action taken against them.' "[31] The "right to enjoy employment opportunities in [an

---

[29] The Court will not address Plaintiff's substantive due process claim again as it already determined above that it fails because Plaintiff fails to allege shocking behavior.

[30] *Ferraro v. Bd. of Trs. of Labette Cnty. Med. Ctr.*, 106 F. Supp. 2d 1195, 1202 (D. Kan. 2000) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

[31] *Stidham*, 265 F.3d at 1153 (quoting *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989) (alteration in original)).

individual's] chosen field – has been repeatedly upheld [as a liberty interest] in the courts."[32] Integrating these two interests, the Tenth Circuit has set forth a four-part test to determine "whether statements infringe upon 'a liberty interest in [one's] good name and reputation as it affects [one's] property interest in continued employment.' "[33]  In addition to meeting § 1983's state action requirement, the plaintiff must show that "(1) the statements impugned his good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or will foreclose other employment opportunities; and (4) the statements were published."[34]  The Tenth Circuit has clarified that the third element of the test is conjunctive—meaning that "the employee must show both that the defamatory statement occurred in the course of employment termination and that it will foreclose other employment opportunities."[35]

Neither party specifically addresses this four-part test in their briefing and whether Williams' statement occurred in the context of terminating Plaintiff.  But the allegations in Plaintiff's amended complaint make clear that Williams' statements were not in the context of Plaintiff's termination.  Plaintiff specifically alleges that she and Labette Health engaged in negotiations aimed at Plaintiff continuing her role for Labette Health but were unable to reach an

---

[32] *Id.*; *see also Corbitt v. Anderson*, 778 F.2d 1471, 1474-75 (10th Cir. 1985) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  As noted above, it appears that Plaintiff includes the deprivation of seeking employment opportunities under both her property and liberty due process claim.  The Court will consider it under her liberty due process claim.

[33] *Stidham*, 265 F.3d at 1153 (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (alteration in original).

[34] *Bjorklund v. Miller*, 467 F. App'x 758, 767 (10th Cir. 2012) (citing *Workman*, 32 F.3d at 481); *see also Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000).

[35] *Bjorklund*, 467 F. App'x at 767 (citing *Guttman v. Khalsa*, 669 F.3d 1101, 1126-27 (10th Cir. 2012)).

agreement. Plaintiff fails to allege that she was terminated and instead alleges that the parties did not enter an additional contract. After the end of Plaintiff's relationship with Labette Health, she sought employment elsewhere. Williams' statements that Plaintiff was violating a non-compete agreement were made to these employers. Plaintiff fails to allege that Williams' statements were about or incident to her termination because she was not terminated. Nor are there any allegations that the statements were made contemporaneously to her leaving Labette Health.[36]

Plaintiff also asserts that she adequately asserts a liberty interest in reputational integrity because she alleges that Williams falsely told the Missouri Board of Registration for the Healing Arts that she abandoned patients. Again, these statements were not made incident to her termination. Thus, because Williams' statements were not incident to her termination,[37] Plaintiff fails to adequately state a claim for a violation of due process as to a liberty interest.

**C.    Qualified Immunity**

Defendant Williams asserts that he is entitled to qualified immunity on both Counts 1 and 2 as alleged against him in his individual capacity. The Court will only address Count 1 as Count 2 has been dismissed. "The qualified-immunity doctrine protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion."[38] If the

---

[36] *See Renaud*, 203 F.3d at 727 (noting that "the nature and the timing of an allegedly defamatory statement" is relevant "to determine whether it has been made in the course of an employee's termination); *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (noting that although the defamatory statements damaged the plaintiff's reputation and impaired future employment prospects, the statements were not made incident to the plaintiff's termination because the plaintiff voluntarily resigned, and the defamatory letter was written several weeks later).

[37] Plaintiff includes these elements in her Amended Complaint under this claim. Yet, even in these allegations, she does not address the termination aspect and simply states that employment opportunities were foreclosed.

[38] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)).

defense of qualified immunity is asserted, the burden is on the plaintiff to show that (1) the defendant's actions violated a federal constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's alleged conduct.[39] Although the plaintiff must prove both elements for the suit to proceed, courts have discretion to choose which part of the test to address first.[40]

Here, Williams argues that Plaintiff does not establish a clear property interest because she only generally alleges a protected interest in medical licensure and the right to seek employment. Plaintiff has a medical license, and Williams concedes that a medical license may be a protected property interest in some scenarios. He argues that it is not in this case because he claims that Plaintiff does not allege that she was foreclosed from *all* public employment and instead only alleges that she was precluded from *potential* employment.

As noted above, the Tenth Circuit has held that the communication of false and damaging allegations against an individual that results in the effective revocation of the individual's license may be sufficient to state a claim for the deprivation of a protected property interest.[41] Here, Plaintiff has alleged just that. In addition, Plaintiff sought leave to amend her complaint to include specific allegations relating to the foreclosure of existing employment with one employer. Thus, the Court finds that Plaintiff adequately alleges that Williams' actions violated a constitutional right.

---

[39] *Id.* (citation omitted).

[40] *Id.* (citation omitted).

[41] *See Stidham*, 265 F.3d at 1152-53.

In addition, this law was clearly established. Ordinarily, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[42] Here, the license to practice medicine as a property right deserving of due process protections has been clearly established in the Tenth Circuit since at least 1983.[43] In addition, the Tenth Circuit issued its *Stidham* decision relating to the effective revocation of a license amounting to a protected property interest in 2001. Thus, the Court finds that the law was clearly established, and based on the factual allegations before the Court, Williams is not entitled to qualified immunity.

### D. Count 4 – Tortious Interference with Prospective Business Advantage

Plaintiff asserts that she had a legitimate expectation of an advantageous business relationship in that she had a legitimate expectancy of becoming promptly licensed in Missouri and becoming promptly licensed would have expanded the number of medical care facilities for which she could apply for employment. She claims that Williams interfered with and delayed this expectancy by falsely telling the Board of Registration for the Healing Arts in Missouri that Plaintiff ignored scheduled call obligations and that she was difficult to work with. Plaintiff asserts that except for Williams' conduct, her application would have been granted in a more timely fashion. Defendants assert that Plaintiff fails to state a claim.

Initially, the Court must address choice of law principles. Defendants contend that Kansas law applies because Plaintiff's residence is Kansas and that is where the wrong was felt. Plaintiff

---

[42] *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (citation omitted).

[43] *Keney*, 718 F.2d at 354 (citing *Green*, 360 U.S. at 492).

does not address choice of law principles but cites to Missouri law. "A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including choice of law rules, of the forum state."[44] "In Kansas, tortious interference claims and defamation claims are governed by the law of the state where the wrong was felt."[45] As to Plaintiff's claims, she alleges that she did not realize a business expectancy in Missouri and that her reputation suffered in Missouri. Thus, the wrong was felt in Missouri, and the Court will apply Missouri law.

Tortious interference with prospective business advantage requires allegations of "1) a valid business expectancy; 2) defendant's knowledge of the contract or expectancy; 3) intentional interference by the defendant inducing or causing a breach of the expectancy; 4) absence of justification; and 5) damages."[46] Plaintiff does not identify any law or provide any support for the proposition that obtaining a medical license is a valid business expectancy.[47] To the extent the business expectancy she alleges is employment with medical care facilities in Missouri, she also does not adequately allege a valid business expectancy because she does not identify any medical

---

[44] *Mendy v. AAA Ins.*, 2017 WL 4422648, at *6 (D. Kan. 2017) (citations omitted).

[45] *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1230 (D. Kan. 2009) (citation omitted).

[46] *Crowe v. Horizon Homes, Inc.*, 116 S.W.3d 618, 624 (Mo. Ct. App. 2003) (citation omitted).

[47] Plaintiff's allegations make clear that she received her medical license. Plaintiff cites to one case for the proposition that interference with an application for a professional license can constitute tortious interference with prospective business advantage. *See Zimmer Radio of Mid-Missouri Inc. v. Lake Broadcasting, Inc.*, 937 S.W.2d 402, 407 (Mo. Ct. App. 1997). The facts of that case, however, are readily distinguishable from the facts here. In *Zimmer Radio*, the plaintiff radio station was operating an existing radio station and filed a request with the FCC to upgrade the radio station's wattage. The increase would significantly increase the plaintiff's geographic service and correspondingly the plaintiff's revenues. *Id*. at 403. After the plaintiff's filing, the defendants filed an application for a construction permit for a new radio station for the purpose of impeding, obstructing, and delaying the plaintiff's upgrade petition. *Id*. The trial court dismissed the case finding that the state law tortious interference claim was preempted by federal law, and the Missouri Court of Appeals affirmed. *Id.* at 406-07. Accordingly, this case does not support Plaintiff's proposition that the delay in obtaining her medical license is a valid business expectancy.

care facilities for which she had any expectancy. "The valid business expectancy requirement involves more than a mere subjective expectancy—it must be a *reasonable* expectancy . . . ."[48]

Furthermore, even if Plaintiff's medical license could be considered a business expectancy, Plaintiff fails to adequately allege the third element of this claim as it requires a breach of the expectancy. Plaintiff received her medical license and therefore her expectancy of obtaining it was not breached. In addition, Plaintiff fails to allege any valid, prospective employment and thus does not adequately allege a breach of that expectancy. Accordingly, Plaintiff fails to state a claim for tortious interference, and this claim is dismissed.

**E.     Count 5 – Defamation**

Plaintiff alleges that Williams told the Missouri Board of Registration for the Healing Arts that Plaintiff refused scheduled call obligations, effectively abandoning patients, and told the Board that she was not easily supervised and difficult to work with. She alleges that these statements were false and intentionally made with malice. Plaintiff asserts that she suffered harm to her reputation, was forced to hire an attorney to defend herself and obtain her license, and lost income and employment opportunities when her license was delayed.

Defendants argue that Plaintiff fails to state a claim because Williams' statement that Plaintiff was not easily supervised is not false and is simply an opinion. Defendants next argue that the statement that Plaintiff refused call obligations is protected by qualified privilege.[49]

---

[48] *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. 2006) (citation omitted).

[49] The Court notes that Defendants primarily rely on Kansas law rather than Missouri law. Kansas and Missouri law are similar, but the Court will consider Missouri law as it has determined that it is the applicable law because the wrong was felt in Missouri.

Finally, Defendants contend that they are immune from liability for providing information to the Board.

A defamation claim requires: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation."[50]  Plaintiff alleges all elements of a defamation claim. Defendants, however, contend that Plaintiff does not adequately allege a defamatory statement, primarily arguing that the statements are not false or that they are entitled to qualified privilege or immunity.

Whether a statement is defamatory depends on the context, and the words are given their plain and ordinary meaning.[51]  "[C]ertain statements, such as statements of 'opinion' not provable as false, cannot be the basis of a defamation claim."[52]  "Whether an alleged statement is capable of being treated as an opinion or as an assertion of fact is a question of law."[53]

The first statement that Plaintiff alleges is defamatory is that she was not easily supervised. This statement is William's opinion.  Thus, it cannot be the basis for a defamation claim.

The second statement that Plaintiff alleges is defamatory is that she refused call obligations. This statement is a factual statement, and Plaintiff alleges that it is false.  Thus, it is a defamatory statement for purposes of a defamation claim.

---

[50] *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (citation omitted).

[51] *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 798 (Mo. 2017) (citation omitted).

[52] *Id.* (citation omitted).

[53] *Id.* (citation omitted).

Defendants argue, however, that this communication is protected by qualified privilege because Williams made the statement upon inquiry to questions from the Board about Plaintiff's conduct while she worked at Labette Health.  "When a defendant is alleged to have made an actionable defamatory statement, the burden is upon the defendant to prove that it is entitled to the defense of qualified privilege."[54]  A communication is privileged if "it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty."[55]

"Whether the surrounding circumstances and relationships are such as to give rise to a qualified privilege is a question of law to be decided by the trial court."[56]  In addition, if a court determines that qualified privilege exists, "the plaintiff may overcome the qualified privilege by proving by clear and convincing evidence that either (1) the defendant made the defamatory statement in bad faith or with actual malice or that (2) the statements made exceed the exigencies of the situation."[57]  "To prove malice, the plaintiff must show that the statements were made with knowledge that they were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubts as to whether they were true."[58]  In addition, generally, "[w]hether the defendant acted with malice in making the defamatory statement or whether the statement made exceeded the exigencies of the situation are questions of fact for the jury."[59]

---

[54] *Deckard v. O'Reilly Auto., Inc.*, 31 S.W.3d 6, 16 (Mo. Ct. App. 2000) (*overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003) (citation omitted)).

[55] *Id.* (citations omitted).

[56] *Id.* (citations omitted).

[57] *Id.* (citations and quotation marks omitted).

[58] *Id*. (citations and quotation marks omitted).

[59] *Id.* (citations omitted).

In this case, and at this juncture, too many circumstances are unknown to decide as a matter of law that qualified privilege exists. In addition, Plaintiff specifically alleges that Williams' false statement that Plaintiff refused call obligations was intentionally made with malice—which could overcome the qualified privilege defense and be a question of fact. The Court must take the allegations as true, and thus, whether Williams is entitled to qualified privilege cannot be decided at this time.

Finally, Defendants claim that they have immunity under R.S. Mo. § 334.128. This statute provides:

> [a]ny person who reports or provides information to the board . . . and who does so in good faith and without malice shall not be subject to an action for civil damages as a result thereof, and no cause of action shall arise against him or her as a result of his or her conduct pursuant to this section.

Although this statute may provide some protection to Defendants, it only does so if Williams provided the information to the Board "in good faith and without malice." As noted above, Plaintiff alleges that Williams' statements were intentionally made with malice at a time when they were known to be false. Whether Williams made this statement in good faith and without malice is a question of fact, and this question cannot be answered at the motion to dismiss stage.

Plaintiff adequately alleges all elements of a defamation claim based on the statement that she refused call obligations. Accordingly, the Court will not dismiss this claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**. Counts 2 and 4 are dismissed. In addition, Plaintiff's substantive due process claims (whether brought under Count 1 or 2) are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Counts 3, 6, and 7 (Doc. 37) is **GRANTED**. Counts 3, 6 and 7 are **DISMISSED**.

Plaintiff's remaining claims are Count 1 and Count 5. Plaintiff is instructed to file an Amended Complaint setting forth her allegations relating to an existing employment relationship with one employer, DocsWhoCare, and Williams' statements which negatively affected that relationship and caused her to lose that employment within 10 days of this Order.

**IT IS SO ORDERED**.

Dated this 12th day of October, 2021.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE