## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KOLETTE SMITH,

       *Plaintiff,*

  vs.

    Case No. 20-CV-2224-EFM-GEB

BRIAN WILLIAMS and LABETTE
COUNTY MEDICAL CENTER d/b/a
LABETTE HEALTH,

      *Defendants.*

### MEMORANDUM AND ORDER

Plaintiff Kolette Smith brings suit against Defendants Brian Williams and Labette County Medical Center d/b/a Labette Health.  She has filed a Second Amended Complaint asserting five claims.  She asserts a claim under 42 U.S.C. § 1983 for denial of a property interest without due process of law.  In addition, she asserts four state law claims under Kansas law: tortious interference with prospective economic advantage, fraud, false light invasion of privacy, and defamation.  Defendants have filed a Motion to Dismiss (Doc. 65) asserting that Plaintiff's claims fail for a variety of reasons.  For the reasons stated in more detail below, the Court grants in part and denies in part Defendants' motion.

## I.  Factual and Procedural Background[1]

Plaintiff is a licensed physician in Kansas.  Plaintiff formerly worked for Defendant Labette Health, a public hospital in Labette County, Kansas, as a hospitalist.  Plaintiff and Labette Health engaged in negotiations aimed at Plaintiff continuing that role for Labette Health but were unable to reach an agreement.  After the end of Plaintiff's relationship with Labette Health, Plaintiff sought employment elsewhere.

Defendant Williams is the President and Chief Executive Officer of Labette Health.  Williams became aware that Plaintiff was seeking employment with other medical care entities.  He began writing to or calling those entities telling them that Plaintiff had a "non-compete agreement" that she was breaking by seeking employment with them.  At no point did Plaintiff have a "non-compete agreement" with Labette Health.  Defendants also began telling medical facilities in Kansas that Plaintiff had voluntarily resigned her hospital privileges and had failed to meet scheduled call obligations.

Plaintiff originally filed her Complaint on May 1, 2020, against Defendant Williams asserting two claims under § 1983—one for denial of a property interest without due process of law and one for denial of a liberty interest in reputational integrity without due process of law.  On November 2, 2020, she filed an Amended Complaint adding Labette Health as a defendant.  She also asserted five more claims: three claims under Kansas law (tortious interference with prospective economic advantage, fraud, and false light invasion of privacy) and two claims under

---

[1] The facts are taken from the Second Amended Complaint and are stated in the light most favorable to Plaintiff, the non-moving party.  The Court will address the applicability of the Second Amended Complaint in further detail below.

Missouri law (tortious interference with prospective economic advantage and defamation).[2] Plaintiff alleged that she filed her Kansas Tort Claims Act ("KTCA") notice on April 27, 2020, and it was deemed denied 120 days later.

Defendants filed a motion to dismiss all claims.  While the motion was pending, Plaintiff filed a motion to dismiss requesting the dismissal of her three claims under Kansas law.  On October 12, 2021, this Court issued its order on the two motions.  Because Plaintiff voluntarily filed a motion to dismiss her Kansas claims, the Court granted Plaintiff's motion to dismiss and found it unnecessary to address the Kansas tort claims or the procedural requirements of the KTCA.

With regard to Defendants' motion, the Court found that Plaintiff failed to state claims for denial of a liberty interest under § 1983 or for tortious interference with prospective economic advantage under Missouri law.  As to the defamation claim under Missouri law, the Court found Plaintiff stated a claim.  The Court also found that Plaintiff stated a claim for the denial of a property interest under § 1983.  In a footnote, the Court stated that Plaintiff alleged in her response that she had an existing relationship with one employer, DocsWhoCare, but those allegations were not in her Amended Complaint.  The Court allowed Plaintiff to amend her Amended Complaint and directed Plaintiff to add these allegations within ten days of the October 12 Order.

On October 26, 2021, Defendants filed a motion for reconsideration of the Court's order.  They asserted that the Court erred when it did not address whether Plaintiff complied with the procedural requirements of the KTCA as to Plaintiff's defamation claim brought under Missouri

---

[2] With regard to these tort claims, the wrong was felt in Kansas for the three claims brought under Kansas law, and the wrong was felt in Missouri for the two claims brought under Missouri law.

law.  Defendants argued that even though Plaintiff's claim was governed by Missouri law, Plaintiff must still comply with the procedural requirements of the KTCA before bringing this tort claim against them.

On February 8, 2022, the Court granted Defendants' motion for reconsideration.  In this Order, the Court first noted that Defendants did not address Missouri law or principles of comity in their original briefing.  Nevertheless, the Court addressed whether Plaintiff was required to procedurally comply with the KTCA before asserting the claim because if Plaintiff failed to do so, the Court would lack subject matter jurisdiction over the claim.  Ultimately, the Court found that based on Missouri principles of comity, Missouri would recognize the KTCA's requirement that written notice of the tort claim must be provided prior to commencing suit on that claim.  In addition, the Court determined that Plaintiff failed to provide proper notice of her tort claim under the KTCA in 2020 because she did not serve the notice on the clerk or governing body of the municipality.  Because Plaintiff failed to provide adequate notice of her tort claim, the Court concluded that it did not have subject matter jurisdiction over the claim and thus it must be dismissed.

On April 20, 2022, Plaintiff filed a motion for leave to file a Second Amended Complaint. Two days later, Judge Birzer held a status conference with the parties, and she granted Plaintiff's motion, noting that the motion was unopposed.  On April 25, 2022, Plaintiff filed her Second Amended Complaint.  In it, she asserts five claims: (1) a claim under 42 U.S.C. § 1983 for denial of a property interest without due process of law, (2) tortious interference with prospective economic advantage, (3) fraud, (4) false light invasion of privacy, and (5) defamation.  Plaintiff's tort claims are brought under Kansas law.  She alleges that she filed her KTCA notice on March 14, 2022, and her claims were denied.

On May 9, 2022, Defendants filed a Motion to Dismiss and Strike.  Defendants seek dismissal of all claims.  They claim that Plaintiff's claims are barred by the statute of limitations, fail to state a claim, and that some communications are protected by qualified privilege.  They also seek to strike Plaintiff's claims, pursuant to K.S.A. § 60-5320, because they contend that her claims implicate their exercise of their right of free speech.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3]  The court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]  If the

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[8] *See id.* at 678.

allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]   Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss.   However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[10]

### III.    Analysis

**A.    Count 1 – Denial of a Property Interest Without Due Process Under § 1983**

Defendants contend that Plaintiff does not provide sufficient details to support this claim. Plaintiff argues that she does.[11]   The claim asserted in the Second Amended Complaint is substantially the same as the one previously asserted in the Amended Complaint.   And the Court already found that Plaintiff adequately stated a claim for denial of a property interest without due process under § 1983.

The Court will only briefly address several of the parties' contentions because its previous ruling has not changed.   Defendants contend that the Court qualified its previous finding that Plaintiff stated a claim.   They claim that the Court only allowed the claim to go forward as to an existing employment relationship with one employer (DocsWhoCare), and that allegation was not

---

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (citations omitted).

[11] Plaintiff entitles her discussion on this claim "Count I (Denial of Liberty and Property Interests Without Due Process of Law in Violation of 42 U.S.C. [§] 1983)."   Count I in her Second Amended Complaint is entitled "Denial of Property Interests Without Due Process of Law in Violation of the Fifth and Fourteenth Amendments and 42 U.S.C. [§] 1983."   The Court previously dismissed Plaintiff's liberty interest claim, and she only alleges a property interest claim in her Second Amended Complaint.   To the extent she attempts to resurrect her failed liberty interest claim, she cannot do so.

in the Amended Complaint before the Court.  They also argue that Plaintiff failed to follow the Court's order to amend her complaint within ten days to include that allegation.  Nor is it included in the Second Amended Complaint that is currently before the Court.  Thus, they argue that Plaintiff fails to state a claim.

Defendants misstate the Court's previous order.  Although the Court did note that it would allow Plaintiff to file an amended complaint to include an allegation regarding an existing employment relationship, it did not foreclose Plaintiff's claim based on her other allegations.  Specifically, the Court found that Plaintiff stated a claim because she included allegations that Defendants' actions resulted in the effective revocation of her medical license.  Thus, Plaintiff's allegations continue to state a claim.

Defendants, however, are correct that the Court previously stated that Plaintiff had 10 days from its order for which to amend her complaint to add additional allegations relating to an existing employment relationship with DocsWhoCare.  Plaintiff did not do so.  Instead, approximately six months after the Court's order, on April 20, 2022, Plaintiff sought leave to amend her complaint.[12] Plaintiff did not include allegations relating to an existing employment relationship in her Second Amended Complaint.  In Plaintiff's response to Defendants' current motion to dismiss, she asserts that due to "internal miscommunication,"[13] the proposed amended complaint attached to her motion for leave to amend was a prior draft and did not include those allegations.  Plaintiff also states that, by separate motion, she will ask for leave to substitute for the inadvertently filed, prior draft of that complaint.

---

[12] Defendant did not oppose Plaintiff's request, and Judge Birzer allowed the Second Amended Complaint to be filed.

[13] Plaintiff filed her response on June 10, 2022.

As of this date,[14] Plaintiff has not filed a separate motion seeking leave to amend. And the Court will not allow any further amendments to Plaintiff's complaint. The Court allowed amendment over six months ago and directed Plaintiff to file the amended complaint within 10 days of its order. She failed to do so. Instead, six months later, she requested leave to file a Second Amended Complaint that also failed to include these allegations. It is Plaintiff's responsibility to follow the Court's orders and to file the correct complaint with the Court, and the Court has already extended Plaintiff leniency. Allowing Plaintiff to file yet another complaint would mean that the current complaint before the Court would be inoperative and invite yet another motion to dismiss. Plaintiff cannot have another do-over. Thus, the Court will consider the Second Amended Complaint that is currently filed with the Court as the operative pleading and will not allow any amendments to it. In sum, Plaintiff states a claim, but she cannot include any additional allegations.

**B.    State Tort Claims**

*1.    Statute of Limitations and KTCA Notice*

Plaintiff brings four tort claims under Kansas state law. Before considering the substance of Plaintiff's allegations, the Court must first address whether any of these claims are barred by the statute of limitations, and the notice requirements under the KTCA. Plaintiff states that these torts occurred in 2018, 2019, and 2021.

A two-year statute of limitations is applicable to Plaintiff's claims of tortious interference with prospective economic advantage, fraud, and false light invasion of privacy.[15]   Plaintiff's

---

[14] It has been almost three months since Plaintiff represented that she would seek leave to amend her complaint.

[15] *See* K.S.A. § 60-513(a)(4) (tortious interference), § 60-513(a)(3) (fraud), and § 60-513(a)(4) (false light).

defamation claim is governed by a one-year statute of limitations.[16]  In addition, the KTCA

requires that notice be given prior to filing suit.  K.S.A. § 12-105b(d) states:

> Any person having a claim against a municipality or against an employee of a
> municipality which could give rise to an action brought under the Kansas tort claims
> act shall file a written notice as provided in this subsection before commencing
> such action. The notice shall be filed with the clerk or governing body of the
> municipality . . . .  Once notice of the claim is filed, no action shall be commenced
> until after the claimant has received notice from the municipality that it has denied
> the claim or until after 120 days has passed following the filing of the notice of
> claim, whichever occurs first. . . . No person may initiate an action against a
> municipality or against an employee of a municipality unless the claim has been
> denied in whole or part.  Any action brought pursuant to the Kansas tort claims act
> shall be commenced within the time period provided for in the code of civil
> procedure or it shall be forever barred, except that, a claimant shall have no less
> than 90 days from the date the claim is denied or deemed denied in which to
> commence an action.

"Compliance with this provision is jurisdictional in nature under Kansas law, such that 'if the

statutory requirements are not met, the court cannot acquire jurisdiction' over the municipality or

the employee on the claim."[17]

As noted above, this case has a complicated procedural history, and the Court will only

briefly set forth the relevant dates here.  Plaintiff first filed suit on May 1, 2020, asserting two

constitutional claims against Williams.  Plaintiff filed an Amended Complaint on November 2,

2020, against Williams and Labette Health asserting seven claims, including five tort claims (three

under Kansas law and two under Missouri law).  In that complaint, she alleged that she filed her

---

[16] *Id.* § 60-514(a).

[17] *Shrum v. Cooke*, 2021 WL 3051891, at *6 (D. Kan. 2021) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 280 Kan. 869, 127 P.3d 319, 325 (2006)).  *See also Farmers Bank & Tr. v. Homestead Cmty. Dev.*, 58 Kan. App. 2d 877, 476 P.3d 1, 14 (2020) ("Failure to file the notice deprives the district court of subject matter jurisdiction over the claim.") (citations omitted); *Steed v. McPherson Area Solid Waste Util.*, 43 Kan. App. 2d 75, 221 P.3d 1157, 1166-67 (2010) (noting that the statutory requirement that an action cannot be commenced until the municipality denies the claim or the claim is deemed denied following a 120-day period is a jurisdictional prerequisite rather than an affirmative defense).

KTCA notice on her tort claims on April 27, 2020, and she waited 120 days to file suit because her claims were then deemed denied.  The Court dismissed Plaintiff's Kansas tort claims after Plaintiff filed a motion to voluntarily dismiss those claims.  On February 8, 2022, the Court found that Plaintiff's April 27, 2020, KTCA notice was not properly filed.  Because Plaintiff failed to provide adequate KTCA notice, the Court did not have jurisdiction over the Missouri defamation claim and dismissed it.

Plaintiff then filed a different KTCA notice on March 14, 2022, that included allegations related to the four tort claims now at issue.[18]  Plaintiff filed her Second Amended Complaint on April 25, 2022.  She alleges that she gave Defendants notice of her tort claims under the KTCA on March 14, 2022, and Defendants denied the claim.

### a. Relation Back

Plaintiff asserts that her Second Amended Complaint relates back to her initial complaint filed on May 1, 2020.  Therefore, she states that all her claims are timely.  Defendants contend that Plaintiff's tort claims asserted in Second Amended Complaint cannot relate back to her original complaint because the Court did not have subject matter jurisdiction over those claims.

Federal Rule of Civil Procedure 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Although Plaintiff's newly asserted tort claims appear to arise out of the same original conduct, there is an issue with these claims relating back to the original complaint.

---

[18] Three of the four claims asserted in the Second Amended Complaint were previously asserted in the Amended Complaint and voluntarily dismissed.

Because Plaintiff is bringing these tort claims under the KTCA, she is required to file a written notice in compliance with the KTCA, "before commencing such action."[19]

The failure to provide notice deprives the Court of jurisdiction over those claims.[20]  At the time of the May 1, 2020, Complaint, Plaintiff had not provided notice.  When Plaintiff filed her Amended Complaint on November 2, 2020, she alleged that she gave notice on April 27, 2020, and waited 120 days for her claim to be deemed denied.  The Court, however, determined that Plaintiff's April 27 notice failed to comply with the statutory requirements.[21]  Thus, Plaintiff did not give notice, and this Court did not and never had subject matter jurisdiction over Plaintiff's tort claims.

The Kansas Court of Appeals has determined that if a court lacks subject matter jurisdiction over the original complaint because of the failure to comply with the KTCA, the original complaint is a "nullity and [] void *ab initio*."[22]  Because Plaintiff cannot bring her tort claims unless and until she gave notice under the KTCA, and the Court cannot have subject matter jurisdiction over those claims until notice is appropriately given, Plaintiff's tort claims cannot relate back to the original complaint.  Thus, the Court must consider whether the tort claims included in Plaintiff's April 25, 2022, Second Amended Complaint are timely based on Plaintiff's March 14, 2022, KTCA notice.

---

[19] K.S.A. § 12-105b(d).

[20] *Shrum*, 2021 WL 3051891, at *6; *Farmers Bank & Tr.*, 476 P.3d at 14; *Steed*, 221 P.3d at 1166-67.

[21] Plaintiff asserts in a footnote that the March 14, 2022 notice was the second time that she sent her KTCA notice.  As noted above, the Court specifically found that the previous notice did not comply with the statute.  Thus, to the extent that Plaintiff argues the first notice has any effect, the Court rejects that contention.

[22] *Steed*, 221 P.3d at 1168 (citation omitted).

*b.  Statute of Limitations*

Defendants argue that any claims based on communications occurring in 2018 and 2019 are barred by the statute of limitations.  They argue that the statute of limitations ran at the latest in February 2021, which was 13 months before Plaintiff filed her KTCA notice (March 2022) and 14 months before she filed her Second Amended Complaint (April 2022).  Plaintiff disagrees and asserts that the applicable statute of limitations were suspended for a period of time.  She claims she filed her KTCA notice prior to the expiration of the statute of limitations.   Because she filed her KTCA notice before the expiration of the applicable statute of limitations, she contends that the 90-day tolling period in K.S.A. § 12-105b(d) saves her claims, and thus the majority of her claims are timely.

During 2020 and 2021, due to COVID-19, the Kansas Supreme Court issued several administrative orders that suspended all statutes of limitations.  The first order went into effect on March 19, 2020,[23] and multiple orders extended the suspension of the statutes of limitations through April 14, 2021.   On April 15, 2021, most statutes of limitations, including the ones applicable in this case, resumed.[24]  "On that day [April 15, 2021], 'a person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended.' "[25]

---

[23] Admin. Order 2020-PR-32 (Kan. Apr. 3, 2020) (noting that "[a]s of . . . March 19, 2020, all statutes of limitations and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings are suspended until further order.").

[24] Admin. Order 2021-PR-020 (Kan. Mar. 30, 2021).

[25] *Fullen v. City of Salina, Kan.*, 2021 WL 4476780, at *7 (D. Kan. 2021) (quoting K.S.A. § 20-171(d)(1)).

Plaintiff relies on February 20, 2019, as the earliest date her causes of action arose (for tortious interference with DocsWhoCare).[26]  Based on that date, when the statute of limitations resumed on April 15, 2021, Plaintiff had 338 days remaining left.[27]  Thus, the two-year statute of limitations would expire on March 18, 2022.

Plaintiff filed her Second Amended Complaint on April 25, 2022—outside of the statute of limitations.  She did, however, file her KTCA notice on March 14, 2022—within the statute of limitations.  And pursuant to K.S.A. § 12-105b(d), Plaintiff *could not* file her claim in court until she filed her KTCA notice, *and* the claim was either denied or deemed denied.[28]  In addition, § 12-105b(d) provides that a claimant has 90 days to file suit once the claim is denied or deemed denied.[29]  Although Plaintiff does not allege in her Second Amended Complaint the specific date her claim was denied, she does allege that it was denied.  Plaintiff filed her KTCA notice on March 14, 2022—before the applicable two-year statute of limitations expired.  Plaintiff then had 90 days

---

[26] Plaintiff does not include a specific February 2019 date in her Second Amended Complaint.  However, she attaches correspondence dated February 20, 2019, to her sur-reply and relies on that date for her tortious interference claim.  Thus, the Court will rely on this date as well.

[27] On March 19, 2020, one year and 27 days had already run on the two-year statute of limitations.

[28] *Farmers Bank & Tr.*, 476 P.3d at 14 ("The law is not complex.  A party may not begin a tort action against a municipality or an employee of a municipality without first filing written notice setting out the facts and circumstances giving rise to the claim."); *Sleeth v. Sedan City Hosp.*, 298 Kan. 853, 317 P.3d 782, 794 (2014) ("The statute plainly provides that no person may initiate a lawsuit until the claim is denied or statutorily deemed denied.") (citation omitted).

[29] K.S.A. § 12-105b(d) ("Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action."); *see also Steed*, 221 P.3d at 1167 ("Under K.S.A. [] 12-105b(d), the statute of limitations is tolled for up to 90 days following the municipality's denial of a claim or the expiration of the 120-day notice period to allow the claimant to commence a civil action."); *Jackson v. Kan. Cnty. Ass'n Multiline Pool*, 2005 WL 8160459, at *6 (D. Kan. 2005) ("When proper notice is given pursuant to § 12-105b(d), the statute of limitations is extended by the number of days between the date the notice is filed and the date the claim is rejected, up to a maximum of 120 days.").

from the denial or deemed denial to commence an action.[30]   Because she filed her Second Amended Complaint on April 25, 2022—which was at least within 90 days of the denial—her claims are timely if they are based on the February 20, 2019, date she provided to the Court.

The Court notes, however, that to the extent her causes of actions with two-year statute of limitations (tortious interference, fraud, and false light invasion of privacy) are based on events occurring in 2018 and 2017, these claims would be barred.  Plaintiff's March 14, 2022 KTCA notice was filed within four days of the applicable statute of limitations expiring for a cause of action arising on February 20, 2019.  Thus, if Plaintiff's cause of actions arose on or before February 15, 2019, it would be barred by the statute of limitations because even Plaintiff's KTCA notice would be untimely on March 14, 2022.  Section 12-105b(d) provides that if an action is not "commenced within the time period provided for in the code of civil procedure," it "shall be forever barred."  The tolling provision in § 12-105b(d) would also be inapplicable if the KTCA notice was not filed within the statute of limitations.  Furthermore, to the extent that Plaintiff's defamation claim is based on defamatory statements occurring in May 2018 and February 2019, it would be barred because the one-year applicable statute of limitations expired prior to the 2020 Kansas administrative order suspending statute of limitations.

In sum, Plaintiff's Second Amended Complaint cannot relate back to her original complaint.  But the statutes of limitations were suspended or tolled for a period of time due to administrative orders by the Kansas Supreme Court.  Plaintiff's tortious interference, fraud, and false light invasion of privacy claims are timely with regard to any acts occurring on or after

---

[30] Defendants state in their reply that had Plaintiff filed her KTCA notice within the statute of limitations, she could have taken advantage of the 90-day tolling provision.  Defendants believed that Plaintiff's claims were untimely and did not discuss the extension to the statute of limitations due to the Kansas Supreme Court's Administrative Orders in their briefing.

February 16, 2019.   To the extent that these claims are based on acts occurring on or before February 15, 2019, they are time barred.   Finally, Plaintiff's defamation claim is governed by a one-year statute of limitations, and thus her claim is limited to statements occurring on or after March 15, 2021.

### 2.   Tortious Interference with Prospective Economic Advantage

Plaintiff alleges that she had a legitimate business expectancy with the probability of future economic benefit in that she had applied for jobs for which she was qualified and likely would have been hired if not for interference by Williams and Labette Health.   Defendants contend that to the extent any of this claim is not barred by the statute of limitations, Plaintiff fails to sufficiently plead the elements of tortious interference with prospective economic advantage.

Under Kansas law, the elements of a tortious interference with prospective business advantage claim are

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[31]

The plaintiff also must prove malicious conduct by the defendant.[32]

Defendants contend that Plaintiff fails to sufficiently plead that she had a business expectancy, that it was reasonably certain she would have obtained the jobs, or that Defendants acted with malice.   The Court disagrees.   Plaintiff's allegations, which must be construed in the

---

[31] *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986).

[32] *Id.*

light most favorable to Plaintiff, adequately assert that she had a legitimate business expectancy in jobs that she applied for which she was qualified.  She does not have to prove at the pleading stage that she would have obtained them, but she provides sufficient detail that certain jobs were available for which she was qualified and was likely to obtain but for Defendants' interference.

As for allegations of malice, although Plaintiff does not use the word "malice" with regard to this claim,[33] she does allege that Defendants intentionally told potential employers false information that she was subject to a non-compete agreement.  Malice is generally defined as "actual evil-mindedness or specific intent to injure."[34]  And generally, malice is a question of fact for the jury.[35]  Here, the inference can be made that Defendants intended to injure Plaintiff by preventing her from obtaining other employment.

In addition, Defendants contend that they have a qualified privilege for Williams' communications with Plaintiff's alleged potential employers.  But Plaintiff alleges in her Second Amended Complaint that Defendants' statements were not privileged, and the Court must construe the facts in the light most favorable to Plaintiff.  In addition, although qualified privilege is a defense in the context of a tortious interference with business prospect claim, determining whether the communication is subject to qualified privilege requires a determination as to the existence of actual malice.[36]  As noted above, the Court has already found that Plaintiff adequately alleged malice, and malice is generally a question of fact.  Here, Plaintiff alleges that Defendants'

---

[33] Plaintiff asserts that she specifically alleged that Williams' comments were made maliciously, but this allegation is within Plaintiff's defamation claim.

[34] *Turner*, 722 P.2d at 1113 (quoting *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063, 1073 (1972) (alteration omitted)).

[35] *Id.*

[36] *Id.* at 1117.

statements about Plaintiff having a non-compete agreement were false and were intentionally made to prospective employers to prevent her from obtaining employment.  The Court cannot decide on a motion to dismiss whether Defendants' statements were made with malice and whether they had a qualified privilege.   Accordingly, Plaintiff adequately alleges a tortious interference with prospective business advantage claim.[37]

3.    *Fraud*

Plaintiff contends that during her employment with Defendant Labette Health, Defendants repeatedly told her that she was required to sign a non-compete agreement to continue her employment.  She claims Defendants knew these statements were untrue and because she was unwilling to sign a non-compete agreement, the statements caused her to terminate her employment with Labette Health and seek other employment.  She asserts that she lost income and employment opportunities when she separated from her employment with Labette Health.  Defendants assert that Plaintiff's claim is barred by the statute of limitations and that she fails to adequately state a claim, particularly because fraud has a heightened standard of pleading.

A fraud claim requires

(1) false statements [that] were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them.[38]

---

[37] As noted above, however, only acts occurring on or after February 16, 2019, are actionable.

[38] *Kelly v. VinZant*, 287 Kan. 509, 197 P. 3d 803, 808 (2008).

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[39] A party must set forth "the circumstances of the fraud, i.e., the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by the complainant's reliance on the false representation."[40]

Here, Plaintiff does not include any specifics as to the timing of the false statements in the body of her fraud claim.  In her "overview" of her Second Amended Complaint, she states that in approximately October 2017, negotiations aimed at extending Plaintiff's services with Labette Health broke down without an agreement and she left Labette Health to pursue other opportunities.[41]  The Court notes that Plaintiff asserts in her briefing that all her tort claims occurred in 2018, 2019, and 2021.  In addition, Plaintiff provided an affidavit with her response to Defendants' motion to dismiss.  In this affidavit, she avers that in 2017 and early 2018, she attempted to reach an agreement to continue working for Labette Health and that Williams told her that her employment obligations would terminate on January 31, 2018, unless she entered into a contract for employment.  She also averred that she informed Williams on January 31, 2018, that she would not be able to sign the contract and would therefore no longer work for Labette Health in the same capacity, but she would be available for consults.  Thus, at the very latest, the fraud occurred prior to or on January 31, 2018.

---

[39] Fed. R. Civ. P. 9(b); *see also* K.S.A. § 60-209(b).

[40] *Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 659 F. Supp. 2d 1167, 1183 (D. Kan. 2009) (quoting *Zhu v. Countrywide Realty, Co., Inc.*, 165 F. Supp. 2d 1181, 1200 (D. Kan. 2001)).

[41] These "overview" statements are not included in her general numbered allegations of her complaint or incorporated into her specific fraud claim allegations.

Fraud claims have a two-year statute of limitations.[42]  Thus, the statute of limitations would have expired on January 31, 2020—well before Plaintiff filed her March 14, 2022, KTCA notice and before the first March 2020 administrative order extending statute of limitations.  The Court notes that a cause of action for fraud "shall not be deemed to have accrued until the fraud is discovered."[43]   However, there are no plausible allegations in Plaintiff's Second Amended Complaint that she discovered the fraud any later than early 2018.  Indeed, as noted above, Plaintiff's fraud claim is wholly lacking in specificity, and the Court has done its best to determine the specifics of Plaintiff's fraud claim.  Accordingly, the Court concludes that Plaintiff's fraud claim is barred by the statute of limitations.[44]

### 4.    *False Light Invasion of Privacy*

Plaintiff alleges that Defendants falsely informed other health care facilities that she had entered into a non-compete agreement with Defendants and that she refused to honor scheduled call obligations.  Defendants argue that to the extent this claim is not barred by the statute of limitations, Plaintiff fails to adequately allege a claim and that Defendants' statements were entitled to qualified privilege.

A false light invasion of privacy claim requires "(1) publication of some kind . . . to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person."[45]   Publication requires "communicating it to the public

---

[42] K.S.A. § 60-513(a)(3).

[43] *Id.*

[44] As noted above, Plaintiff's operative complaint is the third one before this Court, and the Court will not allow further amendments to the complaint.

[45] *Dominguez v. Davidson*, 266 Kan. 926, 974 P.2d 112, 121 (1999) (internal quotation marks and citations omitted).

at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."[46] Injury in a false light invasion of privacy claim requires "mental distress from having been exposed to public view."[47]

Defendants assert that Plaintiff fails to adequately allege any representation that was highly offensive to a reasonable person and fails to adequately allege publication because she only alleges that Defendants informed a few health care facilities.  Plaintiff asserts that any reasonable doctor falsely accused of abandoning patients would find the accusation highly offensive.  In addition, Plaintiff contends that Defendants told multiple hospitals and medical providers, and she only referenced several hospitals in the complaint by way of example. She asserts that the list will expand during discovery.   For purposes of Rule 12(b)(6), Plaintiff adequately alleges representations that were highly offensive and publication to survive a motion to dismiss.  And as to Defendants' contention that their statements are protected by qualified privilege, the Court rejects this argument for the reasons stated above.  Accordingly, the Court declines to dismiss this claim.[48]

### 5.    *Defamation*

Plaintiff's final claim is one for defamation.  She alleges that Defendants' statements to McPherson Hospital and other medical facilities in Kansas that she had refused scheduled call obligations were false.  She claims that her reputation was injured and that she lost employment opportunities.

---

[46] *Id.* (citation omitted).

[47] *Id.* (citation omitted).

[48] As noted above, however, the statute of limitations bars any publications occurring before February 16, 2019.

Defendants contend that Plaintiff fails to state a claim.[49]   They assert that even if the statements are false,[50] Defendants are entitled to qualified privilege.  In addition, they state that Plaintiff's allegation that Defendants made statements in bad faith and maliciously is conclusory.

A defamation claim involves "(1) false and defamatory words; (2) communication to a third person; and (3) harm to the reputation of the person defamed."[51]   Similar to the tortious interference and false light claims, qualified privilege is a defense to a defamation claim.[52] Correspondingly, whether the defendant acted with malice is a necessary inquiry to the qualified privilege question and is generally a question of fact.[53]  But as noted above, for purposes of a Rule 12(b)(6) motion, Plaintiff has adequately alleged Defendants' statements were made with malice. Thus, the Court cannot decide on the pleadings whether Defendants are entitled to qualified privilege, and thus Plaintiff adequately states a claim for defamation.

Finally, the Court notes that unlike the other state law claims at issue, a one-year statute of limitations is applicable to defamation claims.  Thus, Plaintiff's defamation claim is further limited to only defamatory statements made on or after March 15, 2021.

---

[49] Defendants agree that any statements occurring in 2021 are timely, but they assert that communications occurring in 2018 and 2019 are untimely.

[50] Defendants also assert that the statements are not false, but that would require the Court to discount Plaintiff's allegations.

[51] *Byers v. Snyder*, 44 Kan. App. 2d 380, 237 P.3d 1258, 1270 (2010) (citation omitted).

[52] *Dominguez*, 974 P.2d at 117.

[53] *Id.*

C.    **Kansas' Anti-SLAPP Statute**

Finally, Defendants bring one last argument for dismissal.  They contend that Plaintiff's

claims implicate their exercise of their right of free speech, and they seek to strike and bar

Plaintiff's claims pursuant to K.S.A. § 60-5320(d).  The Kansas Public Speech Protection Act, also

known as the Kansas Anti-SLAPP statute, provides that:

> A party may bring a motion to strike the claim if a claim is based on, relates to or
> is in response to a party's exercise of the right of free speech, right to petition or
> right of association.  A party bringing the motion to strike has the initial burden of
> making a prima facie case showing the claim against which the motion is based
> concerns a party's exercise of the right of free speech, right to petition or right of
> association. If the moving party meets the burden, the burden shifts to the
> responding party to establish a likelihood of prevailing on the claim by presenting
> substantial competent evidence to support a prima facie case.  If the responding
> party meets the burden, the court shall deny the motion.[54]

As an initial matter, the parties disagree whether the Kansas Anti-SLAPP statute is

applicable in federal court.  "[I]n a federal diversity action, the district court applies state

substantive law—those rights and remedies that bear upon the outcome of the suit—and federal

procedural law—the processes or modes for enforcing those substantive rights and remedies."[55]

Plaintiff argues that the statute is procedural in nature and thus inapplicable here.  Defendants

contend that the Kansas Anti-SLAPP statute is applicable and that one judge from the District of

Kansas has already made this determination.

The Court need not determine whether the statute is procedural or substantive because,

assuming without deciding that the Kansas Anti-SLAPP statute was applicable in federal court,

the Court would still find that statute inapplicable to the facts in this case.  Under the Kansas Anti-

---

[54] K.S.A. § 60-5320(d).

[55] *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018).

SLAPP statute, Defendants have "the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech."[56] K.S.A. § 60-5320(c)(4) defines the "exercise of the right of free speech" as "a communication made in connection with a public issue or issue of public interest." A "communication" is defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written or electronic."[57] " 'Public issue or issue of public interest' includes an issue related to 'health or safety.' "[58]

Here, Defendants' communications involve two matters: (1) Plaintiff had a non-compete agreement with Defendants, and (2) Plaintiff's refusal to perform scheduled call obligations. The first communication clearly does not involve a communication regarding a public issue, and Defendants do not assert otherwise. Thus, the statute is inapplicable to it.

As to the second communication, Defendants assert that communication about Plaintiff's refusal to perform scheduled call obligations was related to health or safety and is an issue of public interest. Other than Defendants making this assertion, there is no discussion as to how this communication is an issue of public interest. Nor is there any discussion as to how this communication relates to health and safety.

The Kansas Anti-SLAPP statute "was passed to protect against meritless lawsuits that chill free speech."[59] "The stated purpose of the statute is to 'encourage and safeguard the constitutional

---

[56] K.S.A. § 60-5320(d).

[57] *Id.* § 60-5320(c)(2).

[58] *Id.* § 60-5320(c)(7).

[59] *Caranchini*, 355 F. Supp. 3d at 1055 (internal quotation marks and citation omitted).

rights of a person to . . . speak freely . . . in connection with a public issue or issues of public interest . . . while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury."[60]  In this case, Defendants' communications to potential employers about Plaintiff not meeting scheduled call obligations do not fall within the type of free speech covered by the statute.   And Defendants fail to demonstrate how this communication was made in connection with a public issue or an issue of public interest related to health and safety.   Defendants could not meet their burden of establishing a prima facie case that their statements were an exercise of the right of free speech even if the statute were applicable here.   Thus, the Court declines to strike or bar Plaintiff's claims pursuant to the Kansas Anti-SLAPP statute.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Strike (Doc. 65) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's § 1983 claim for denial of a property interest without due process remains.  Plaintiff's tortious interference claim remains but is limited to acts occurring on or after occurring on or after February 16, 2019.  Plaintiff's fraud claim is dismissed.  Plaintiff's false light invasion of privacy claim remains but is limited to acts occurring on or after February 16, 2019.  Plaintiff's defamation claim remains but is limited to defamatory statements made on or after March 15, 2021.  In addition, Plaintiff cannot amend her Second Amended Complaint.

A motion for reconsideration is not encouraged.

---

[60] *Id.* (quoting K.S.A. § 60-5320(b)).

**IT IS SO ORDERED**.

Dated this 14th day of September, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE